476 So.2d 716 (1985)
Manny EAGLE and Helen Eagle, Appellants, Cross Appellees,
v.
BENEFIELD-CHAPPELL, INC., and Virginia Chappell and Derrell Benefield, Appellees, Cross Appellants.
No. 84-996.
District Court of Appeal of Florida, Fourth District.
September 18, 1985.
Rehearing and Clarification Denied November 6, 1985.
*717 Louisa Smith-Adam of Montgomery, Lytal, Reiter, Denney & Searcy, P.A., Barbara J. Compiani and Phillip Burlington of Edna L. Caruso, P.A., West Palm Beach, for appellants/cross appellees.
Joel M. Weissman and Victor K. Oraham of Joel M. Weissman, P.A., West Palm Beach, for appellees/cross appellants.
RIVKIND, LEONARD, Associate Judge.
Appellants, plaintiffs below, appeal a final judgment in their favor awarding damages and interest for breach of contract. Appellees' cross appeal has been abandoned.
The issues presented by this appeal concern the refusals of the trial judge to award damages for conversion and to pierce the corporate veil.
We have concluded the trial court erred on both counts. Ergo, we reverse and remand with directions to enter a final judgment against the corporate and individual defendants, jointly and severally, for conversion, in a like sum of $79,586.09, nunc pro tunc, April 4, 1984 (the date of entry of the final judgment which is the subject matter of the instant appeal).
The sordid conduct of appellees which led to this appeal follows.
In early 1983, appellants, Manny and Helen Eagle, contracted with a decorating firm, Benefield-Chappell, Inc., a Florida corporation, in which Virginia Chappell and Derrell Benefield, appellees/defendants, were the sole shareholders, to design and furnish a condominium unit. The contract also provided that the written approval of the Eagles had to be obtained prior to the decorator purchasing any items. Benefield-Chappell was to be compensated at forty (40%) percent above cost as to furniture and related items and at twenty-five (25%) percent above cost as to construction work.
Benefield-Chappell, Inc. was incorporated in 1971. The Articles of Incorporation show Virginia Chappell as President, Treasurer and sole shareholder, owning 100 shares. However, Derrell Benefield testified that he had been an officer of the corporation since 1971 and that he owned fifty (50%) percent of the stock, although he was not sure the shares had actually been issued. He also testified that the two shareholders held meetings daily but no minutes were taken. Chappell agrees that she and Benefield each own fifty shares but, to her knowledge, the shares have not been issued. The corporation filed annual reports and corporate tax returns each year.
In March, 1983, Benefield-Chappell arranged for Daro Builders to do the construction work on the Eagle apartment. Daro provided Benefield-Chappell with an item-by-item breakdown of the construction cost, which totaled $27,908.00. Benefield-Chappell obtained some of Daro's stationery and prepared an identical breakdown but increased the price of each item by approximately thirty (30%) percent, for a total of $32,791.05. The higher bill was *718 sent to the Eagles and, in addition, another one-third was added as Benefield-Chappell's design fee. Mrs. Chappell indicated that she did not know why the breakdown done in her office was different from that provided by Daro, but suggested there might have been a bookkeeping error or that the increase was due to changes the Eagles wanted. The trial court rejected her explanation as unworthy of belief.
The Eagles paid Benefield-Chappell an initial $2,500.00 in design fees. On March 19, 1983, they paid $22,000.00 towards the construction work. In April, they made two $50,000.00 payments as furniture deposits. The deposits were made in advance of signing confirmations for the furniture so that the money could be cleared through the bank by the time the confirmations were signed. However, as it turned out, the Eagles objected to the confirmations and they were never signed. It was undisputed that the $100,000.00 payment was made for the express and sole purpose of ordering furniture and that no furniture could be ordered, nor could the funds be expended, without signed confirmations. None of the money was spent for furnishings; yet, when the parties had a falling out and terminated the contract on April 22, 1983, Benefield-Chappell refused to return the $100,000.00 to the Eagles. In August, 1983, Mrs. Chappell concluded that the Eagles were entitled to a refund of $26,700.00 and that amount was refunded in November, 1983. Prior to the trial, the corporate account in which the Eagles' $100,000.00 had been deposited was depleted, at various times as low as $22,000.00.
The Eagles subsequently sued Benefield-Chappell, Inc., Derrell Benefield and Virginia Chappell for a refund. After a non-jury trial, the trial court found Benefield-Chappell to be entitled to $3,037.41 in out-of-pocket expenses, $2,500.00 in design fees and $22,561.00 in construction costs. The court also found that the Eagles had paid $124,500.00 of which they were refunded $26,700.00. The court concluded that, after deducting the amounts to which Benefield-Chappell was entitled, the balance due the Eagles was $69,701.00, plus interest, and final judgment was entered in the total sum of $79,586.09 against Benefield-Chappell, Inc. Final judgment was entered in favor of the individual defendants.
The trial court found that plaintiffs failed to prove that the corporate veil should be pierced or that defendants committed conversion of plaintiffs' funds. As to the latter, the court noted that the money was not required to be kept in a separate account but could be, and was, commingled with other funds. Further, the court found that defendants lacked the requisite intent to deprive plaintiffs of their money because they were given legal advice that they had a claim which could have equalled the amount of plaintiffs' funds held by them, nor did they intend to permanently deprive plaintiffs of the funds.
We disagree. We find that the retention of funds belonging to the Eagles after termination of the contract constituted a conversion. We also find a conversion occurred when the account was depleted below $100,000.00. In the instant case, the deposits totaling $100,000.00 were to be held intact and released only upon written confirmation by the Eagles. The two deposits of $50,000.00 each are sufficiently capable of identification because they were delivered to be used for a specific purpose. Belford Trucking Co. v. Zagar, 243 So.2d 646 (Fla. 4th DCA 1970). It matters not that there was no restriction against commingling. The conversion did not occur while the money was in the account. It took place when the money was disbursed without authorization. Allen v. Gordon, 429 So.2d 369 (Fla. 1st DCA 1983). A creditor's failure to apply funds as directed by a debtor constitutes a conversion. All Cargo Transport, Inc. v. Florida East Coast Railway Co., 355 So.2d 178 (Fla. 3d DCA 1978), cert. denied, 359 So.2d 1214 (Fla. 1978). Liability for conversion does not require proof of knowledge or intent to deprive one of his property. Klein v. Newburger, Loeb & Co., 151 So.2d 879 (Fla. 3d DCA 1963). The trial court should have *719 entered judgment on the count for conversion.
We find no difficulty in piercing the corporate veil to hold Virginia Chappell and Derrell Benefield personally liable. We acknowledge that courts are generally reluctant to pierce the corporate veil and will do so only in exceptional cases. State ex rel Continental Distilling Sales Co. v. Vocelle, 158 Fla. 100, 27 So.2d 728 (1946). The failure of Benefield-Chappell to issue stock and keep proper corporate records, standing alone, are insufficient grounds to render the individuals personally liable. Riley v. Fatt, 42 So.2d 769 (Fla. 1950). But see: Mabry Corp. v. Dobry, 141 So.2d 335 (Fla. 2d DCA 1962); cert. denied, 146 So.2d 750 (Fla. 1962).
In Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114, 1121 (Fla. 1984), the Florida Supreme Court held that the corporate veil may not be pierced "... unless it be shown that the corporation is formed or used for some illegal, fraudulent or unjust purpose... ." (emphasis added). In the case sub judice, this closely held shell corporation was used for a fraudulent and unjust purpose. The deliberate increase of the actual construction costs (see appendices to this opinion) and then adding an additional one-third to that for a design fee, contrary to the terms of their contract, is a sufficient showing of improper conduct to pierce the corporate veil.
We strike, as improper, all reference in appellants' brief regarding their fruitless efforts to collect the judgment against the corporation.
Regrettably, appellees apparently fail to regard that "a good name is rather to be chosen than great riches."[1]
REVERSED and remanded to amend the final judgment in accordance herewith.
DOWNEY and HURLEY, JJ., concur.

APPENDIX A

*720 

APPENDIX B

*721 
NOTES
[1] Proverbs, XXII, 1.