Celestino **LANZ** and Gloria Lanz, his wife, in their own right and as guardian and next best friend of Michael Lanz, an incompetent, and Richard G. Milstein, Plaintiffs,

v.

**RESOLUTION TRUST CORPORATION,** as Receiver for Brickell Banc Savings Association, f/k/a Brickell Savings and Loan Association, a Florida Chartered bank, Defendant.

Celestino **LANZ** and Gloria Lanz, Michael Lanz, and Richard G. Milstein, Third Party Plaintiffs,

v.

Onelio **CEJAS** and Hilario Gonzalez, Third Party Defendants.

No. 89–0624–CIV.

United States District Court, S.D. Florida.

May 20, 1991.

---

Arthur Tifford, Miami, Fla., for Richard G. Milstein.

Stephen Kessler, Miami, Fla., for Celestino and Gloria Lanz.

Michael Weisberg, Miami, Fla., for Hilario Gonzalez.

John Dick, Miami, Fla., for Onelio Cejas.

Amy Koran, Miami, Fla., for RTC.

David Goldman, Miami, Fla., for Cohen & Kokus.

## MEMORANDUM OPINION AND ORDER GRANTING FINAL SUMMARY JUDGMENT IN FAVOR OF RTC

MORENO, District Judge.

THIS CAUSE came before the Court upon defendant's, Resolution Trust Corporation, Amended Motion for Summary Judgment, file dated November 1, 1990. On May 9, 1991, this Court heard oral argument on the Motion.[1] After consideration of the motions, responses and replies thereto, and the pertinent portions of the record, defendant RTC's amended motion for summary judgment is GRANTED.

### FACTUAL AND PROCEDURAL BACKGROUND

Brickell Banc Savings Association, previously known as Brickell Banc Savings and Loan Association, was a State chartered savings and loan, insured by the Federal Savings and Loan Insurance Corporation. On March 15, 1989, the Federal Home Loan Bank Board appointed FSLIC conservator of Brickell Banc. On June 9, 1990, RTC was appointed receiver.

In 1979, the Lanzes, represented by the law firm of Cohen & Kokus, brought a medical malpractice action for medical services which allegedly left their minor son Michael an incompetent. The Lanzes settled the case in May 1982 for $1,215,000.00.

1. RTC's pending motion for judgment on the pleadings was also argued. The Court need not decide the merits of this motion.

The amount of money received by the Lanzes was approximately $635,000, which was divided into damages properly payable to the Lanzes in their own right for $180,000 and payable to the Lanzes on behalf of Michael in the amount of $454,987.54. On June 1, 1982, a check for Michael's portion of the settlement was issued on the law firm's trust account payable to the Lanzes as guardians of Michael Lanz, a minor.

On June 3, 1982, the Lanzes deposited the checks with Brickell Banc.[2] The proceeds of the checks were divided into four $100,000 accounts and a fifth account for the remainder. None of the resulting accounts were guardianship accounts. Rather, the accounts bore the Lanzes names, as principals, holding certificates of deposit. Later, the Lanzes pledged these certificates for various loans made by Brickell Banc.[3]

In September 1982, over 3 months after delivery of the settlement proceeds to the Lanzes, the Probate Court entered an order appointing the Lanzes as guardians, mandating that all liquid assets be placed in a depository designated by the court pursuant to Fla.Stat. § 69.031. Brickell Banc was not informed of the order and was not designated by the court as the restricted depository.

RTC dismissed its original claim, but this Court[4] retained jurisdiction over the pending counterclaims and third-party claims.[5] Summary judgment was granted as to Count I of the counterclaim under the D'Oench Duhme doctrine which protects FSLIC as conservator, from liability for secret agreements not evidenced in bank records. All punitive damage claims were also dismissed as such damages cannot be recovered against FSLIC as conservator.

## STANDARD FOR SUMMARY JUDGMENT

■ Summary judgment pursuant to Fed.R.Civ.P. 56 is appropriate when there exists no genuine issue as to any material fact and a decision may be rendered as a matter of law. The party moving for summary judgment has the burden of demonstrating that no genuine issue as to any material fact exists, and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ The facts relied on by the movant must be viewed in the light most favorable to the non-moving party so that any doubt as to the existence of a genuine issue of material fact will be resolved in favor of denying the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Nevertheless, the motion must be granted if the Court is satisfied that no real factual controversy is present.

■ Finally, the party opposing the motion may not simply rest upon mere allegations or denials of the pleadings. After the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex, supra*, 477 U.S. at 324, 106 S.Ct. at 2553.

## LEGAL ANALYSIS

Plaintiffs have asserted claims for breach of trust (Count II), conversion (Count III) and negligence (Count VIII) against RTC under the Third Amended Counterclaim, Cross-Claim and Third Party

---

**2.** No court orders regarding any guardianship accompanied the check nor were any such court orders in existence at that time, regarding disposition of the funds.

**3.** In June 1982, defendant Hilario Gonzalez, Esq., filed a petition for the appointment of a guardian of Michael, but did not secure an order appointing a guardian over the property of Michael, or letters of guardianship prior to the delivery of the check to the Lanzes, or deposit of the check with Brickell Banc.

**4.** This case was previously assigned to the Honorable Sidney Aronovitz and transferred to this Court's docket on August 15, 1990.

**5.** The matter before the Court is brought by Guardian Milstein, on behalf of Michael Lanz, against the RTC, as receiver for Brickell Banc.

Complaint. The breach of trust and negligence claims both center on the existence of a fiduciary duty between plaintiffs and Brickell Banc. RTC contends that, as a matter of law, plaintiffs cannot maintain such claims as the relationship between Brickell Banc and the Lanzes was that of lender-borrower-customer. That is, Brickell Banc owed no fiduciary duty to the Lanzes.

■ Courts have traditionally viewed the relationship between a savings and loan and a depositor to be one of debtor-creditor where the savings and loan's obligation consists of the return of the sum deposited upon proper demand. *Anderson National Bank v. Luckett*, 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692 (1944). In order for a confidential or fiduciary relationship to exist under Florida law, there must be substantial evidence showing some dependency by one party and some undertaking by the other party to advise, counsel, and protect the weaker party. *See Cripe v. Atlantic First Nat. Bank*, 422 So.2d 820 (Fla.1982).

■ In an arms length transaction however, there is no duty imposed on either party to act for the benefit or protection of the other party, or to disclose facts that the other party could, by its own due diligence have discovered. *Metcalf v. Leedy, Wheeler & Co.*, 140 Fla. 149, 191 So. 690 (1939). The fact that one party places trust or confidence in the other does not create a confidential relationship in the absence of some recognition, acceptance or undertaking of the duties of a fiduciary on the part of the other party. *Harris v. Zeuch*, 103 Fla. 183, 137 So. 135 (1931); *Barnett Bank of West Florida v. Hooper*, 498 So.2d 923 (Fla.1986).

■ The advice alleged by the Lanzes primarily consists of statements that they could open accounts in their own names and that the funds should be maintained in accounts no larger than $100,000. Specifically, plaintiffs allege that: (1) the Lanzes are not well versed in English and were disadvantaged in dealing with Brickell Banc;[6] (2) the Lanzes requested guidance, advice and instructions on what to do with the proceeds of the settlement checks; (3) Brickell Banc induced or acquiesced the Lanzes to endorse the check that they held; (4) on the advice of Brickell Banc, the Lanzes pledged the proceeds of the check as collateral for certain loans; (5) Brickell Banc acted as a bailee or trustee for the Lanzes and were thus in a fiduciary relationship to them; and (6) the loans were made and enlarged by Brickell Banc, knowing that the Lanzes could not understand the financial transactions and did not have the means to repay resulting in the ultimate loss of pledged collateral. RTC asserts that these contentions fail to support the existence of any fiduciary duty or any other special duty.

In order to establish a breach of trust, plaintiffs must prove the existence of a fiduciary relationship and that the savings and loan had knowledge and notice at the time of the alleged breach that such breach was occurring or the legal equivalent of such knowledge or notice. *Centrust Sav. Bank v. Barnett Banks Trust Co., N.A.*, 483 So.2d 867 (Fla. 5th DCA 1986). Where, as here, there can be no fiduciary relationship, there can be no breach of trust.[7]

The case of *Gale v. Harbor Federal Sav. and Loan*, 571 So.2d 114 (Fla. 4th DCA 1990) is particularly enlightening on the facts of the instant case. In *Gale*, a mother was appointed guardian of her minor child's person and property. The personal injury settlement was made payable to "Olive Williams, as Guardian of Felicia Williams, a Minor."[8] The bank, Harbor Federal, designated the account established as a custodianship rather than a guardianship account, giving the mother complete

---

**6.** It is interesting to note that all transactions that took place were conducted in Spanish.

**7.** The same legal analysis applies to the negligence claim as absent a duty, a party may not be held liable for negligence. *Richmond v. Florida Power & Light Co.*, 58 So.2d 687 (Fla.1952).

**8.** The check here was made payable in an identical fashion: "Celestino and Gloria Lanz as Guardians of Michael Lanz, a Minor."

control and dominion of the funds. Upon an inventory of the guardianship, the trial court determined that the mother had wrongfully dissipated the funds in the account for her own use. She was removed as guardian and a successor guardian was appointed.

The *Gale* court found that, as a matter of law, since the trial court had never ordered the bank to supervise disbursements pursuant to Fla.Stat. § 69.031, the bank was not liable for any misappropriation of the sums by the guardian. The incorrect designation of the account has no bearing on the result *sub judice*. The *Gale* court concluded that it would be prohibitively expensive, and contrary to the spirit of the statute, to require a bank or savings and loan association to force the guardian to go to court every time he or she wished to make a withdrawal. Like Harbor Federal, under the facts of this case, Brickell Banc cannot be held accountable for the parents' misappropriation of guardianship assets. The Court finds that as a matter of law, Counts II and VIII fail and summary judgment should be entered in favor of RTC.

 Count III must fail as well. Under well defined principles established by the 11th Circuit, Brickell Banc cannot be held liable for conversion. A conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time. *National Union Fire Ins. Co. v. Carib Aviation, Inc.*, 759 F.2d 873 (11th Cir.1985); *Senfeld v. Bank of Nova Scotia Trust Co. (Cayman), Ltd.*, 450 So.2d 1157 (Fla. 3d DCA 1984). The essence of the conversion is not the possession of property by the wrongdoer, but rather such possession in conjunction with a present intent to deprive the person entitled to possess of the property, which intent may be, but is not always, shown by demand and refusal. Clearly, Brickell Banc did not possess the present intent to wrongfully deprive Michael Lanz of the guardianship funds at the time the Lanzes made the initial deposits or subsequent transactions. Further, Brickell Banc never attempted to appropriate an ownership interest in the funds. The Court finds that

summary judgment should be entered as to Count III. It is

ADJUDGED that this case is DISMISSED as there remain no claims pending against federal defendant RTC. This Court declines to exercise its pendent jurisdiction as to any of the third party claims.

DONE AND ORDERED.